JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JHOANA HORTA, *et al.*,

Plaintiffs,

v.

FORD MOTOR COMPANY,

Defendant.

Case No. 5:25-cv-1452-CV (ACCVx)

**ORDER GRANTING MOTION TO REMAND**

**[DOC. # 15]**

Before the Court is Plaintiffs' Jhoana Horta and Jose Valencia ("Plaintiffs") July 24, 2025, Motion to Remand to Los Angeles Superior Court. Doc. # 15 ("Motion"). Defendant Ford Motor Company ("Defendant") filed an opposition brief on August 8, 2025. Doc. # 17 ("Opposition"). With its Opposition, Defendant also filled a declaration from Sarah Garbuzov. Doc. # 17-1 ("Garbuzov Decl."). On August 15, 2025, Plaintiffs filed a reply. Doc. # 18 ("Reply").

On August 21, 2025, the Court took the Motion under submission, finding it appropriate for decision without oral argument. Doc. # 19; *see* Fed. R. Civ. P. 78(b); C.D. Cal. L. Civ. R. 7-15. For the reasons stated below, the Court GRANTS the Motion.

///

///

## I. INTRODUCTION

Plaintiffs filed the present action on December 20, 2024, in the Superior Court of California for the County of San Bernardino. Doc. # 1-1 ("Compl."). The Complaint asserts one cause of action against Defendant Ford Motor Company ("Defendant") under the Song-Beverly Consumer Warranty Act for breach of express warranty. *See generally*, Compl. Plaintiffs seek general damages, special damages, actual damages, monetary damages, consequential and incidental damages, civil penalties, attorney fees and costs, and prejudgment interest. *See id.* at Prayer.

## II. FACTUAL BACKGROUND

Plaintiffs allege that, on or around January 31, 2018, they purchased a 2018 Ford Explorer, VIN: 1FM5K7D89JGA25802 (the "Vehicle") for $50,282.92. Compl. ¶ 15. Defendant manufactured the Vehicle. *See id.* ¶ 11.

Plaintiffs allege they entered into a warranty contract with Defendant regarding the Vehicle. *Id*. During the express warranty period, defects and nonconformities allegedly became apparent in the Vehicle that impaired its use, value, or safety and Defendant was unable to repair the Vehicle in accordance with the warranty after a reasonable number of repair attempts. *Id*. ¶¶ 16–19.

## III. PROCEDURAL BACKGROUND

Plaintiffs filed the Complaint on December 20, 2024, in San Bernardino County Superior Court. On December 24, 2024, Plaintiffs served a copy of the Complaint and Summons on Defendant. *See* Doc. # 15-2 ("Reed Decl.") ¶ 5. On February 3, 2025, Defendant filed an answer in the Superior Court. Doc. # 1-2. On June 10, 2025, Defendant Ford Motor Company removed the action to Federal Court, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332. Doc. # 1 ("NOR").

## IV. LEGAL STANDARD

In general, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court." 28 U.S.C. § 1441(a). "The right of removal is entirely a

creature of statute and a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress." *Syngenta Crop. Protection, Inc. v. Henson*, 537 U.S. 28, 32 (2002) (internal quotation marks omitted). Where Congress has passed a statute providing a right of removal, the statute, unless otherwise stated, is to be strictly construed against removal. *Id.* "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (internal quotation marks omitted); *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (*per curiam*) (noting the "longstanding, near-canonical rule that the burden on removal rests with the removing defendant"). Moreover, any doubts regarding the existence of subject matter jurisdiction must be resolved in favor of remanding the action to state court. *See Gaus*, 980 F.2d at 566 ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

## V. DISCUSSION

Defendant contends that removal was proper here under 28 U.S.C. § 1332 because diversity of citizenship exists between the Parties, and the amount in controversy exceeds $75,000. NOR at 2–5. However, the Court, upon its own review, is not satisfied that the Parties have established that diversity jurisdiction is proper. For the reasons set forth below, the Court finds that Defendant has failed to establish that diversity jurisdiction exists.

Federal courts have a duty to examine jurisdiction *sua sponte* before proceeding to the merits of a case, *see Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999), "even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 501 (2006). Indeed, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); *see Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2003) ("Subject matter jurisdiction may not be waived, and, indeed, we have held that the district court must remand if it lacks jurisdiction."); *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002) ("Federal Rule of Civil Procedure 12(h)(3) provides that a court may

raise the question of subject matter jurisdiction, *sua sponte*, at any time during the pendency of the action, even on appeal.") (footnote omitted); *Washington v. United Parcel Serv., Inc.*, No. CV 09-01131 DDP (AGRx), 2009 WL 1519894, *1 (C.D. Cal. June 1, 2009) (a district court may remand an action where the court finds that it lacks subject matter jurisdiction "either by motion or *sua sponte*").

Here, Defendant removed this action on the basis of diversity jurisdiction. NOR at 2–3. To show that this action exceeds the jurisdictional minimum, *see* 28 U.S.C. § 1332(a), Defendant first calculated actual damages as $38,384.49 which includes statutory offsets. Opp. at 22–23. Because actual damages were insufficient to reach the jurisdictional threshold, Defendant added civil penalties, (*see id.*; Cal. Civ. Code § 1794(c)), as well as at least $5,000 in attorney's fees, which caused the amount in controversy to exceed $75,000. *Id.* at 23–24. Accordingly, whether removal is proper turns on Plaintiffs' claim for civil penalties. *See Pennon v. Subaru of Am., Inc.*, Case No. 2:22-cv-03015-SB-RAO, 2022 WL 2208578, *2 (C.D. Cal. June 17, 2022).

The amount in controversy is determined based on the complaint at the time the notice of removal is filed. *See Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002) ("[T]he core principle of federal removal jurisdiction on the basis of diversity . . . [is] that it is determined (and must exist) as of the time the complaint is filed and removal is effected."). A plaintiff who establishes a violation of the Song-Beverly Act may also recover a civil penalty equal to "two times the amount of actual damages," where the defendant's violation was willful. Cal. Civ. Code § 1794(c); *see Langner v. General Motors LLC*, No. 2:25-cv-06856-SVW-AJR, 2025 WL 3281526, *4 (C.D. Cal. Nov. 24, 2025). However, "[t]he civil penalty under California Civil Code § 1794(c) cannot simply be assumed." *Pennon*, 2022 WL 2208578, at *2 (internal quotation marks omitted). Rather, "[t]o satisfy its burden, the removing party must make some effort to justify the assumption by, for example, pointing to allegations in the complaint suggesting award of a civil penalty would be appropriate, and providing evidence—such as verdicts or judgments from similar cases—regarding the likely amount of the penalty." *Id.* (internal quotation marks and

alteration omitted); *see, e.g.*, *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020) (stating, in CAFA removal case, that a defendant satisfies the amount-in-controversy requirement "if it is reasonably possible that it may be liable for the proffered punitive damage amount" and that "[o]ne way to meet the burden is to cite a case based on the same or a similar statute in which the jury or court awarded punitive damages based on the punitive-compensatory damages ratio relied on by defendant in its removal notice").

In other words, the Court must determine the amount in controversy based on the facts that are before it, not on contingent, uncertain, or speculative allegations. That is, the amount in controversy cannot be met by conjecture or speculative allegations regarding a contingent claim, *i.e.*, willfulness, that is not plausible based on the allegations in the Complaint. *See, e.g.*, *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 543 (3d Cir. 1995) ([“The court] will not ordinarily consider such speculative arguments in determining the amount in controversy"); *see also Kheel v. Port of N.Y. Auth.*, 457 F.2d 46, 49 (2d Cir. 1972) ("[T]he jurisdictional test is applicable to that amount that flows directly and with a fair degree of probability from the litigation, not from collateral or speculative sources").

Here, Plaintiffs' allegations regarding willfulness are boilerplate and largely conclusory. Plaintiffs allege that Defendant "acted willfully in its failure to comply with the Song-Beverly Act," and include a general allegation about their unsuccessful attempts to have Defendant repair the Vehicle and Defendant's unfulfilled assurances that it could repair the Vehicle within the warranty period. *See* Compl. ¶¶ 17, 18, 21, 25. Other courts have deemed allegations such as "[p]laintiff reasonably relied on the false representations" and "[defendant] knew [his] representations were false" conclusory and therefore insufficient to place civil penalties in controversy. *See Byrd v. GMAC Mortg. LLC*, No. CV 10-2579 AG (MLGX), 2011 WL 13214304, at *6 (C.D. Cal. Jan. 6, 2011); *Whitley v. Maguire*, No. 222CV01837ODWJEMX, 2022 WL 17418624, at *5 (C.D. Cal. Dec. 5, 2022); *In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*, 689 F. Supp. 3d 760, 769 (C.D. Cal. 2023) (offering a sixth repair attempt after plaintiff's counsel

demanded repurchase of vehicle does not meet the requirements of "willful" action to make a civil penalties claim).

Under these circumstances, "plaintiff['s] boilerplate allegations regarding defendant['s] willfulness are, without more, insufficient to establish that civil penalties . . . should be included in the amount in controversy."[1] *See Lopez v. Kia Am., Inc.*, 693 F. Supp. 3d 1063, 1068 (C.D. Cal. 2023); *see, e.g.*, *Pennon*, 2022 WL 2208578, at *2 ("Defendant has made no serious attempt to justify the inclusion of a civil penalty in the calculation of the jurisdictional amount."); *Langner*, 2025 WL 3281526, at *5 ("Gesturing to a bare request by Plaintiffs for civil penalties, with only a conclusory allegation of willfulness, absent facts making willfulness plausible – falls short[.] . . . Furthermore, allowing such minimal allegations to support removal would run counter to the strong presumption that must exist *against* removal jurisdiction.").

Defendant attempts to bolster its justification for including civil penalties in its calculation by providing an attorney declaration that states, in Defendant's attorney's experience, Plaintiffs' law firm routinely pursues Song-Beverly Act civil penalties when its clients have presented their vehicles for repair multiple times, as Plaintiffs allegedly did here. Garbuzov Decl. ¶¶ 4–6. Defendant also relies on Plaintiffs' failure to respond to its offer to repurchase the vehicle. *See* Opp. at 24; Doc. # 17-5.

At most, Defendant's evidence shows that Plaintiffs *may* pursue civil penalties. Defendant does not identify case-specific facts connecting Plaintiffs' repair history to a potentially willful violation or otherwise provide a nonspeculative basis for valuing any penalty. *Pena v. Gen. Motors LLC*, No. 2:25-CV-07587-SVW-JC, 2026 WL 292421, at *5 (C.D. Cal. Feb. 3, 2026) (declining to include civil penalties despite six repair presentations because the repair orders did not show an unrepaired, reproducible defect or other facts

---

[1] While there is a split on this issue, the Court finds more persuasive the view that civil penalties should not be included in the amount in controversy when the Complaint includes only conclusory allegations regarding willfulness

tending to establish willfulness, and the defendant offered no other evidence supporting a definite, nonspeculative penalty); *D'Amico v. Ford Motor Co.*, No. CV 20-2985-CJC (JCx), 2020 WL 2614610, at *3 (C.D. Cal. May 21, 2020) (declining to include civil penalties where the defendant cited four jury verdicts awarding such penalties but did not explain how those cases were factually similar to the case before the court). If anything, the summary of warrantable repairs for the Vehicle attached to counsel's declaration undermines Plaintiffs' allegations of willful conduct; it does not identify any defect that the repair facility could duplicate but not repair, any recurring problems with the Vehicle, or any other fact tending to establish willfulness. *See generally* Doc. # 17-4.

Nor does Defendant's own repurchase offer establish the value Plaintiffs place on this action, particularly because Plaintiffs neither accepted, rejected, nor countered the offer. *Cf. Mitchel v. Ford Motor Co.*, No. 5:25-cv-01466-DOC-DTB, Doc. # 18, at 4 n.2 (C.D. Cal. Sept. 11, 2025) (finding a settlement offer greater than the value of the vehicle that the plaintiff rejected not relevant to determining the amount in controversy because additional context about the offer was missing). Defendant's repurchase offer could even provide evidence against Defendant's alleged willfulness in violating the Song-Beverly Act, because "even an offer made after a plaintiff files suit can rebut willfulness." *In re: DPS6 Powershift*, 689 F. Supp. 3d at 769. Having considered Defendant's evidence, the Court concludes that Defendant has not shown by a preponderance of the evidence that a civil penalty should be included in the amount in controversy.

In sum, given that any doubt regarding the existence of subject matter jurisdiction must be resolved in favor of remanding the action, *see Gaus*, 980 F.2d at 566, the Court is not persuaded, under the circumstances here, that Defendant has met its burden of showing by a preponderance of the evidence that the amount in controversy meets the jurisdictional threshold. *See Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold. Where doubt regarding the right

to removal exists, a case should be remanded to state court.") (footnote omitted); *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("Since it was not facially evident from the complaint that more than $75,000 was in controversy, [Defendant] should have proven, by a preponderance of the evidence, that the amount in controversy met the jurisdictional threshold.") (citation modified).

Finally, the Court denies Plaintiffs' request for attorney fees. Section 1447(c) provides in relevant part that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). Here, the Court finds that Defendant did not lack an objectively reasonable basis for removal.

## VI. CONCLUSION

For the foregoing reasons, the court GRANTS IN PART Plaintiffs' Motion to Remand and ORDERS as follows:

1. The above-referenced action shall be remanded to the Superior Court of the State of California, County of Los Angeles, for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c).

2. The Court remands the case to the Los Angeles County Superior Court, Case No. CIVSB2435317. The Clerk shall send a certified copy of this Order to the Superior Court.

3. The Court directs the Clerk to effect the remand immediately and close this federal case.

**IT IS SO ORDERED.**

Dated: September 8, 2026

Cynthia Valenzuela

HON. CYNTHIA VALENZUELA
UNITED STATES DISTRICT JUDGE